IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DORNA SPORTS, S.L., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 24 CV 11676 |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| THE INDIVIDUALS, CORPORATIONS, | ) | |
| LIMITED LIABILITY COMPANIES, | ) | |
| PARTNERSHIPS AND | ) | |
| UNINCORPORATED ASSOCIATIONS | ) | |
| IDENTIFIED ON AMENDED SCHEDULE A | ) | |
| HERETO, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Dorna Sports, S.L. ("Plaintiff") in this "Schedule A" case moves for default judgment against seven defaulting defendants ("Defendants") pursuant to Federal Rule of Civil Procedure 55. For the following reasons, the Court enters default and denies Plaintiff's motion for default judgment [41].

**I.      Background**

Plaintiff alleges that it is "in the business of organizing, staging, developing and commercializing all aspects of the motorcycling championship FIM World Championship Grand Prix, commercially known under the 'MOTOGP' mark." (Dkt. 14 ¶ 7.) Plaintiff registered with the United States Patent and Trademark Office the following trademarks: Registration No. 2,947,076, 3,508,867, and 4,541,007 for the "MOTOGP" design and word mark in classes 7, 9, 12, 16, 25, 28, and 41; Registration No. 3,512,835 for the "MOTOGP KIDS" design and word mark in classes 9, 25, and 28; Registration No. 4,381,707 for the "MOTO2" word mark in classes 4, 7, and 12; Registration No. 4,423,485 for the "MOTOGP" design mark in classes 9, 25, 28, and 41; Registration No. 5,393,530

for the "MOTOGP" word mark in classes 9, 16, 18, 25, 28, 35, and 41; and Registration No. 5,543,234 for the "MOTOE" design and word mark in classes 25, 38, and 41. (*Id.* ¶ 8.) The Court refers to these trademarks collectively as the "MOTOGP Trademarks."

Plaintiff alleges that Defendants sell unauthorized and unlicensed counterfeit and infringing products using counterfeit versions of Plaintiff's Trademarks.

Plaintiff now moves this Court to enter default and default judgment against Defendants and order that: (a) Defendants are liable on all counts of Plaintiff's complaint; (b) Plaintiff is entitled to an award of statutory damages against each Defendant in the amount of $100,000; (c) Plaintiff is entitled to a permanent injunction prohibiting Defendants from making, importing, offering for sale, and selling their counterfeit/infringing products; and (d) all current and newly discovered assets in Defendants' financial accounts operated by Alibaba and Alipay be transferred to Plaintiff.

## II.    Legal Standard

Default judgment requires two steps: (1) the establishment, or entry, of the default; and (2) the actual entry of a default judgment. See Fed. R. Civ. P. 55(a)–(b). "Upon entry of default, 'the well-pleaded allegations of a complaint relating to liability are taken as true.'" *Myles v. Reighter*, 2018 WL 1542391, at *2 (N.D. Ill. Mar. 28, 2018) (Castillo, J.) (quoting *VLM Food Trading Int'l, Inc. v. Ill. Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016)). To receive a default judgment, "the plaintiff still must establish his entitlement to the relief he seeks." *VLM Food Trading Int'l, Inc.*, 811 F.3d at 255. *See also United States v. Borchardt*, 470 F.2d 257, 260 (7th Cir. 1972) (holding that the entry of default "does not of itself determine rights"); *Sawyer v. Columbia College*, 2013 WL 587532, at *2 (N.D. Ill. Feb. 14, 2013) (Dow, Jr., J.) ("Even after entry of an order of default, a district court still must consider (1) whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law and (2) whether the non-defaulting party is entitled to any damages on its

claim — and, if so, in what amount — for allegations in a complaint relating to the amount of damages suffered ordinarily are not taken as true.") (cleaned up).

### III. Discussion

"To state a claim for trademark infringement under the Lanham Act, a plaintiff must allege that (1) its mark is protectable, and (2) the defendant's use of the trademark is likely to cause confusion among consumers." *Walgreen Co. v. Walgreen Health Sols., LLC*, 2024 WL 4278101, at *4 (N.D. Ill. Sept. 24, 2024) (Kendall, J.) (citing *SportFuel, Inc. v. PepsiCo, Inc.*, 932 F.3d 589, 595 (7th Cir. 2019)). (*See also* Dkt. 42 at *6.) "Whether or not there is a likelihood of confusion is a question of fact as to the probable or actual actions and reactions of prospective purchasers of the goods or services of the parties." *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 436 (7th Cir. 1999) (quoting *International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1084 (7th Cir. 1988)). The Seventh Circuit has set forth a test to determine likelihood of confusion, none of the elements of which are dispositive: "(1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiffs mark; (6) any evidence of actual confusion; and (7) the intent of the defendant to 'palm off' his product as that of another." *Milwaukee Elec. Tool Corp. v. Individuals, Corps., Ltd. Liab. Cos., P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 2025 WL 1677503, *3 (N.D. Ill. Jun. 13, 2025) (Kocoras, J.) (quoting *Sorensen v. WD–40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015)). Claims for false designation of origin under 15 U.S.C. § 1125(a) and violations of the Illinois Uniform Deceptive Trade Practices Act similarly require a plaintiff to show a likelihood of confusion. *See, e.g.*, *Johnny Blastoff, Inc.*, 188 F. 3d at 436.

The Court finds that default judgment is inappropriate here because Plaintiff has failed to show that the unchallenged facts in the complaint constitute a legitimate cause of action. Plaintiff claims several times, in various ways, that "Defendants' use of Plaintiff's trademarks to sell Counterfeit

MOTOGP Products is causing consumer confusion." (Dkt. 21 at *12.) But beyond this conclusory statement, Plaintiff fails to provide any actual facts explaining *how* or *why* an ordinary observer would be deceived, instead seeming to ask that this Court take it at its word.

More importantly, Plaintiff does not identify or provide any description about "Plaintiff's genuine products," (Dkt. 14 ¶ 20)—*i.e.*, the products for which consumers might confuse the counterfeit ones. Indeed, despite using the term more than a dozen times, Plaintiff does not even define the term "MOTOGP Products" (which presumably refers to Plaintiff's legitimate, genuine products) in any of its briefs. *See, e.g.*, Dkt. 14 at *3 (amended complaint referring to "MOTOGP products"); Dkt. 21 at *14 (motion for a temporary restraining order referring to "genuine MOTOGP Products"); Dkt. 42 at *1 (motion for entry of default judgment referring to "original MOTOGP brand products"). The Court acknowledges that Plaintiff submitted visual snapshots of the allegedly counterfeit products from Defendants' webpages on third-party platforms. (*See* Dkt. 22; Dkt. 47-1 at *3–*6). But without any information about Plaintiff's genuine products, the Court cannot find that Plaintiff has adequately shown that Defendants' use of the trademarks at issue is likely to cause confusion among consumers. *See Sawyer*, 2013 WL 587532, at *2.

### IV. Conclusion

For the foregoing reasons, the Court enters default and denies Plaintiff's motion for default judgment. The Court orders all assets in Defendants' third-party platform financial accounts to be released. Plaintiff is directed to relay this Order to all third-party platforms implicated in this action. Civil case terminated.

**IT IS SO ORDERED.**

                                                     Sharon Johnson Coleman
                                                     United States District Judge

DATED: 9/11/2025